# EXHIBIT 1

NYSCEF
Suffolk County Supreme Court

**Document List**

**Index # 626067/2026**

Created on:10/07/2026 10:39 AM

Case Caption: **MANHATTAN MEDICAL PRACTICE, PC v. BLUE CROSS BLUE SHIELD ASSOCIATION**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| 1 | SUMMONS + COMPLAINT<br>DISP-5518982 | Processed | 09/02/2026 | Stadler, J. |
| 2 | NOTICE OF APPEARANCE (PRE RJI) | Processed | 09/18/2026 | Schmidt, E. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE | Processed | 09/18/2026 | Schmidt, E. |

**THE SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

MANHATTAN MEDICAL PRACTICE, PC,

Plaintiff,

-against-

BLUE CROSS BLUE SHIELD ASSOCIATION,

Defendant.

Index No.: _______________

**SUMMONS**

Plaintiff Designates **Suffolk** as the Place of Trial

The Basis of Venue is Place of Occurrence
989 W Jericho Tpke
Smithtown, NY 11787

Plaintiff's Place of Business:
565 Plandome Road
Manhasset, NY 11030

**TO THE ABOVE-NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within twenty(20) days of the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: September 2, 2026
Fair Lawn, New Jersey

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*
By: */s/ John P. Stadler*
John P. Stadler, Esq.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 735-0845
jstadler@gottliebandgreenspan.com
**New York Office:**
99 Wall Street, Suite 1139
New York, NY 10005
(Please respond to our NJ office.)

**DEFENDANT'S ADDRESS:**
Blue Cross Blue Shield Association
200 East Randolph Street
Chicago, IL 60601

**THE SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

| | |
|---|---|
| MANHATTAN MEDICAL PRACTICE, PC,<br>Plaintiff,<br>-against-<br>BLUE CROSS BLUE SHIELD ASSOCIATION,<br>Defendant. | Index No.:<br><br>**COMPLAINT** |

Plaintiff Manhattan Medical Practice, PC ("Plaintiff"), by and through its attorneys, Gottlieb & Greenspan, LLC, by way of Complaint against Blue Cross Blue Shield Association ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Manhattan Medical Practice, PC is a medical practice specializing in surgery with a principal place of business located at 565 Plandome Road, Manhasset, NY 11030. At all relevant times, Plaintiff was an out-of-network, or non-participating healthcare provider that provided medical and surgical services to seven patients[1] (the "Patients") who are covered under healthcare plans sponsored, funded, operated, controlled and/or administered by Defendant.

2. Upon information and belief, Defendant, Blue Cross Blue Shield Association maintains its corporate offices at 200 East Randolph Street, Chicago, IL 60601. Defendant offers plans that provide healthcare coverage to its members and their dependents, as well as administrative services to self-funded plans. Its plans provide out-of-network health and medical coverage in New York to patients of Plaintiff, including the Patients referenced herein.

[1] To comply with HIPPA confidentiality and patient privacy, each patient will be identified herein only by initials.

3. This Court has jurisdiction over Defendant because it (a) is a New York resident, having been incorporated in New York and having headquarters or offices in this State; (b) conducts business in the State of New York and so derives benefits and privileges from this State, including but not limited to, contracting to provide healthcare plans to residents of New York or contracting to provide plans that permit members or dependents to obtain medical care in New York, and so are subject to New York law, regulation, and oversight governing Defendant's health insurance plans; and/or (c) has consented to the jurisdiction of New York by registering and being authorized to do business in this State.

4. The medical services at issue in this matter were rendered in New York.

5. Pursuant to CPLR §503 venue is proper in the Supreme Court of New York, Suffolk County, because a substantial part of the events or omissions giving rise to the claim occurred in Suffolk County.

## SUBSTANTIVE ALLEGATIONS

6. At all relevant times, Plaintiff was an out-of-network, or non-participating, health provider that rendered medical and surgical services to the Patients.

7. On August 4, 2025, Plaintiff provided medical treatment to Patient A.S. at North Shore Surgical Center ("North Shore"), located in Smithtown, New York, and expected appropriate payment. At the time of treatment, Patient A.S. was a member of a health plan insured and/or administered by Defendant. After treating Patient A.S., Plaintiff submitted a Health Insurance Claim Form ("HCFA") medical bill to Defendant seeking payment of $10,750.00 for the medical treatment rendered under Current Procedural Terminology ("CPT") code 00813.

8. In response to Plaintiff's HCFA, Defendant allowed payment of $663.68 for CPT code 00813.

9. On January 15, 2025, Plaintiff provided medical treatment to Patient J.P. at North Shore, and expected appropriate payment. At the time of treatment, Patient J.P. was a member of a health plan insured and/or administered by Defendant. After treating Patient J.P., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $6,916.50 for the medical treatment rendered under CPT code 01992.

10. In response to Plaintiff's HCFA, Defendant allowed payment of $746.64 for CPT code 01992.

11. On April 23, 2025, Plaintiff provided medical treatment to Patient S.S. at North Shore, and expected appropriate payment. At the time of treatment, Patient S.S. was a member of a health plan insured and/or administered by Defendant. After treating Patient S.S., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $4,093.50 for the medical treatment rendered under CPT code 01810.

12. In response to Plaintiff's HCFA, Defendant allowed payment of $497.76 for CPT code 01810.

13. On April 26, 2025, Plaintiff provided medical treatment to Patient A.D. at North Shore, and expected appropriate payment. At the time of treatment, Patient A.D. was a member of a health plan insured and/or administered by Defendant. After treating Patient A.D., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $13,700.00 for the medical treatment rendered under CPT code 01992.

14. In response to Plaintiff's HCFA, Defendant allowed payment of $677.04 for CPT code 01992.

15. On August 14, 2025, Plaintiff provided medical treatment to Patient M.R. at North Shore, and expected appropriate payment. At the time of treatment, Patient M.R. was a member of

a health plan insured and/or administered by Defendant. After treating Patient M.R., Plaintiff submitted a HCFA medical bill to Defendant seeking payment for the medical treatment rendered, itemized under the following CPT codes:

a. $6,500.00 for CPT code 01630; and

b. $6,500.00 for CPT code 01630.

16. In response to Plaintiff's HCFA, Defendant allowed payment as follows:

a. $331.84 for CPT code 01630; and

b. $292.08 for CPT code 01630.

17. On April 18, 2025, Plaintiff provided medical treatment to Patient L.H. at North Shore, and expected appropriate payment. At the time of treatment, Patient L.H. was a member of a health plan insured and/or administered by Defendant. After treating Patient L.H., Plaintiff submitted a HCFA medical bill to Defendant seeking payment for the medical treatment rendered, itemized under the following CPT codes:

a. $5,000.00 for CPT code 01810; and

b. $5,000.00 for CPT code 01810.

18. In response to Plaintiff's HCFA, Defendant allowed payment as follows:

a. $248.88 for CPT code 01810; and

b. $248.88 for CPT code 01810.

19. On September 19, 2025, Plaintiff provided medical treatment to Patient C.D. at North Shore, and expected appropriate payment. At the time of treatment, Patient C.D. was a member of a health plan insured and/or administered by Defendant. After treating Patient C.D., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $6,850.00 for the medical treatment rendered under CPT code 01992.

20. In response to Plaintiff's HCFA, Defendant allowed payment of $219.06 for CPT code 01992.

21. Plaintiff required the Patients to complete forms or other documents providing their insurance information. Plaintiff also generated medical records detailing the procedures performed, including operative reports and insurance claim forms referencing the amounts due. Thereafter, Plaintiff submitted timely and appropriate claims to Defendant that included the required information and supporting documents.

22. Defendant routinely receives, processes, and partially pays or denies claims submitted by Plaintiff, thereby acknowledging both the validity of the services rendered and its obligation to provide reimbursement.

23. At all relevant times Defendant provided the Patients with out-of-network coverage and/or emergency services coverage, thus permitting the Patients to seek treatment from Plaintiff.

24. Defendant is obligated to provide reasonable and appropriate reimbursement for out-of-network and/or emergency services in accordance with applicable state and federal law. Because Plaintiff's services were rendered emergently and/or inadvertently in a participating network facility, reimbursement for those services is governed, in part, by the No Surprises Act ("NSA"), which establishes a framework for determining reimbursement for certain out-of-network services. *See* 42 U.S.C. § 300gg-111 *et seq*. However, Plaintiff's right to recover in this action arises from independent state law causes of action and the parties' contractual and quasi-contractual obligations.

25. The NSA precludes medical providers from billing patients for amounts beyond applicable in-network cost-sharing obligations and establishes a process for determining appropriate reimbursement for out-of-network services. Under that process, when an issuer makes

an initial payment or denial of payment and the provider disputes that determination, the parties must engage in a period of negotiation. If the dispute is not resolved by the end of the negotiation period, either party may initiate an Independent Dispute Resolution ("IDR") proceeding before a neutral third-party certified IDR entity ("CIDRE"), which evaluates the parties' submissions and selects one proposed payment amount as the appropriate reimbursement. The non-prevailing party is then required to remit payment consistent with that determination within thirty (30) days.

26. With respect to the Patients and claims referenced herein, as a matter of regular business practice, Plaintiff engaged in the negotiation of disputes with Defendant and sought proper reimbursement of those disputes pursuant to the NSA. However, Defendant systematically failed to issue proper payment for the medical and surgical services rendered by Plaintiff. Instead, Defendant issued gross underpayment and/or no payment at all. Defendant's actions or inactions were unlawful, improper and arbitrary. Defendant's conduct reflects a pattern and practice of systematically minimizing reimbursement obligations to out-of-network providers.

27. On December 11, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4568333, awarding Plaintiff $10,750.00 for CPT code 00813, amounting to an additional $10,086.32 over Defendant's initial payment.

28. On January 6, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4784587, awarding Plaintiff $6,916.50 for CPT code 01992, amounting to an additional $6,169.86 over Defendant's initial payment.

29. On January 7, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4662765, awarding Plaintiff $4,093.50 for CPT code 01810, amounting to an additional $3,595.74 over Defendant's initial payment.

30. On January 12, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4816336, awarding Plaintiff $13,700.00 for CPT code 01992, amounting to an additional $13,022.96 over Defendant's initial payment.

31. On January 23, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4884741, awarding Plaintiff $6,500.00 for CPT code 01630, amounting to an additional $6,168.16 over Defendant's initial payment.

32. On January 23, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4968902, awarding Plaintiff $6,500.00 for CPT code 01630, amounting to an additional $6,207.92 over Defendant's initial payment.

33. On February 19, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-5093885, awarding Plaintiff $5,000.00 for CPT code 01810, amounting to an additional $4,751.12 over Defendant's initial payment.

34. On February 19, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-5078492, awarding Plaintiff $5,000.00 for CPT code 01810, amounting to an additional $4,751.12 over Defendant's initial payment.

35. On March 30, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-5518982, awarding Plaintiff $6,850.00 for CPT code 01992, amounting to an additional $6,630.94 over Defendant's initial payment.

36. While Plaintiff made repeated and exhaustive efforts to address Defendant's systematic failure to issue proper payment and/or comply with state and federal law, Defendant has refused to remit payment consistent with the IDR determinations.

37. District Courts have repeatedly held that no private right of action exists for medical providers to compel payment of IDR determinations through the Court. *See Mod. Orthopedics of*

*NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS 215824 at * 23 (D.N.J. Nov. 3, 2025); and *Farkas, M.D., LLC* v. *Horizon Blue Cross Blue shield of New Jersey*, No. 25 Civ. 54, 2025 WL 1860241 at *5 (E.D.N.Y. July 2, 2025). The NSA, however, does not "preclude a provider from bringing a suit under traditional state-law causes of action." *Mod. Orthopedics of NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS 215824 at * 23 (D.N.J. Nov. 3, 2025). "Far from expressing preclusive intent, the NSA's preemption clause is clear:

> [The NSA] shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with individual or group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement of [the NSA.]

42 U.S.C. § 300gg-23. The IDR is an opt-in process, it provides an alternative, streamlined route to determine the amount owed between the parties – it does not displace traditional state-law remedies like unjust enrichment. Thus, where Plaintiff is statutorily prohibited from balance billing its patients, Plaintiff's only method of reimbursement is from Defendant, and Defendant has failed to issue proper payment for out-of-network medical services rendered by Plaintiff, Plaintiff's remedy lies in state law causes of action.

38. Plaintiff seeks damages due to Defendant's actions.

39. Plaintiff's claims are not predicated on an assignment of benefits from the Patients. Because the NSA protects a patient from balance billing, the patient has not sustained any damage and therefore does not have an Employee Retirement Income Security Act ("ERISA") cause of action (or any other) to assign to Plaintiff.

40. Notwithstanding any reference herein to the IDR process established under the NSA, Plaintiff does not seek to enforce a federal statutory right or to assert a private cause of action

under the NSA. Rather, Plaintiff asserts independent causes of action arising under New York statutory, regulatory and common law. Any IDR determinations referenced herein are pled as evidence of the reasonable value of services rendered and Defendant's obligations, and not as the sole basis for liability.

**AS AND FOR A FIRST CAUSE OF ACTION**

**BREACH OF EXPRESS CONTRACT (CLICK-WRAP – NSA IDR)**

41. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

42. In each instance, Plaintiff initiated the NSA's IDR process by submitting a Notice of IDR Initiation to the Department of Health and Human Services via the NSA's federal IDR portal. Thereafter, the parties were presented with IDR participation terms, including the federal IDR portal's Terms of Use and the CIDRE's participation agreement.

43. The Offer Process states:

> 1. Submit both administrative fee and IDR entity fee directly to the certified IDR entity.
>
> 2. Complete and submit the Notice of Offer form and supporting documentation.
>
> 3. You will receive an acknowledgment email once the form is submitted and communications for the certified IDR entity if more information is needed related to your offer.
>
> 4. After a certified IDR entity makes a payment determination, the amount due to the prevailing party must be paid no later than 30 calendar days after the determination.

44. Before submitting its Notice of Offer, uploading documents and proceeding with the IDR, each party was required to affirmatively manifest its assent to the following terms and conditions and to acknowledge its assent with an electronic signature:

I agree to

- Pay the administrative fee.
- Pay the IDR entity fee if my dispute is found eligible for the IDR process.
- Pay the outstanding amount (if any) of the out-of-network rate that is my responsibility as determined by the certified IDR entity.
- I also understand that the final payment determination made by the certified IDR entity is binding upon the parties and **not subject to judicial review except under certain limited circumstances**.

45. The parties' mutual agreement to accept and comply with the CIDRE determinations is sufficient consideration.

46. Under the express terms of the click-wrap agreements, Defendant is required to pay the outstanding amount as determined by the CIDRE.

47. The parties' agreement to be bound by the IDR process constitutes an independent contractual obligation, separate and apart from any statutory framework.

48. On December 11, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4568333, awarding Plaintiff $10,750.00 for CPT code 00813, amounting to an additional $10,086.32 over Defendant's initial payment.

49. On January 6, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4784587, awarding Plaintiff $6,916.50 for CPT code 01992, amounting to an additional $6,169.86 over Defendant's initial payment.

50. On January 7, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4662765, awarding Plaintiff $4,093.50 for CPT code 01810, amounting to an additional $3,595.74 over Defendant's initial payment.

51. On January 12, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4816336, awarding Plaintiff $13,700.00 for CPT code 01992, amounting to an additional $13,022.96 over Defendant's initial payment.

52. On January 23, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4884741, awarding Plaintiff $6,500.00 for CPT code 01630, amounting to an additional $6,168.16 over Defendant's initial payment.

53. On January 23, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4968902, awarding Plaintiff $6,500.00 for CPT code 01630, amounting to an additional $6,207.92 over Defendant's initial payment.

54. On February 19, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-5093885, awarding Plaintiff $5,000.00 for CPT code 01810, amounting to an additional $4,751.12 over Defendant's initial payment.

55. On February 19, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-5078492, awarding Plaintiff $5,000.00 for CPT code 01810, amounting to an additional $4,751.12 over Defendant's initial payment.

56. On March 30, 2026, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-5518982, awarding Plaintiff $6,850.00 for CPT code 01992, amounting to an additional $6,630.94 over Defendant's initial payment.

57. Despite Defendant's agreement to pay any outstanding amount as determined by the CIDREs, Defendant has failed to pay any of the CIDREs' determinations.

58. Defendant's failure to remit payment within thirty (30) days of the issuance of the CIDREs' determinations constitutes an additional and independent breach of its obligations under the parties' agreements. Defendant's failure to comply with the CIDREs' determinations deprived Plaintiff of the benefit of its bargain under the parties' agreements. Defendant's refusal to comply with the CIDREs' determinations further undermines the agreed-upon dispute resolution process and frustrates the purpose of the parties' agreement.

59. The click-wrap agreements constitute valid express contracts under New York law, supported by mutual consideration, including Plaintiff's opportunity to obtain binding dispute resolution and Defendant's participation in the NSA's IDR process and agreement to be bound by the outcome.

60. Plaintiff seeks, under this Count, to recover the amounts awarded through the IDR process, as Defendant expressly agreed to be bound by such determinations through the parties' click-wrap agreements.

61. These damages arise from Defendant's contractual obligation to comply with the binding determinations issued by the CIDREs', independent of Plaintiff's alternative claims for the reasonable value of the services rendered.

62. Defendant breached the express click-wrap agreements by failing to pay the amounts determined by the CIDREs'.

63. In each instance, Defendant's failure to pay the amount determined by the CIDREs constitutes a material breach of contract.

64. As a result of Defendant's breach of contract, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages in the amount of $61,384.14;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**AS AND FOR A SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

65. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

66. The click-wrap agreements constitute valid express contracts under New York law governing the parties' agreement to participate in the NSA's IDR process and to pay the amount determined by the CIDREs.

67. The law implies in every contractual relationship, including the click-wrap agreements between Plaintiff and Defendant, a covenant of good faith and fair dealing. Defendant is required to act in a manner that is consistent with Plaintiff's reasonable expectations.

68. Defendant breached this covenant by engaging in bad faith conduct including, but not limited to:

- Failing to honor binding payment determinations; and
- Delaying payment without justification.

69. Defendant acted with an improper motive and violated Plaintiff's rights and benefits under the contract and breached the contract through acts of commission and omission described herein that are wrongful and without justification.

70. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**AS AND FOR A THIRD CAUSE OF ACTION**

**THIRD-PARTY BENEFICIARY (Pled Alternatively)**

71. Plaintiff repeats and realleges the allegations each and every allegation set forth above as though fully set forth herein.

72. The IDR process established under the No Surprises Act requires both providers and insurers to enter into binding agreements with the Centers for Medicare and Medicaid Services ("CMS") as a condition of participation.

73. These agreements require both parties to be bound by the resulting payment determinations.

74. The click-wrap agreement entered into with CMS for the IDR process is expressly intended to benefit both healthcare providers and healthcare insurance carriers by ensuring fair and enforceable reimbursement for medical services rendered.

75. The requirement that providers who prevail in the IDR process be paid in accordance with IDR determinations demonstrates that healthcare providers were intended, not incidental, beneficiaries of those agreements.

76. Plaintiff is a member of the class of intended beneficiaries of Defendant's click-wrap agreements with CMS.

77. Defendant's refusal to comply with the binding IDR determinations frustrates the purpose of the click-wrap agreements and deprives Plaintiff of the benefits intended to be conferred.

78. Accordingly, Plaintiff is entitled to enforce Defendant's obligations as an intended third-party beneficiary.

79. Plaintiff hereby seeks payment of the IDR determinations as determined by the CIDREs as well as all benefits obtained by Defendant because Defendant did not timely pay the

amounts owed, including without limitation the interest or investment income generated by such funds.

**WHEREFORE,** Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**AS AND FOR A FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED-IN-FACT CONTRACT (Pled Alternatively)**

80. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

81. Plaintiff pleads this Cause of action in the alternative to the Third Cause of Action and without prejudice to it, in the event the Court determines that the click-wrap agreements do not constitute express contracts between Plaintiff and Defendant.

82. At all relevant times, Defendant received, reviewed, adjudicated and paid claims submitted by Plaintiff for medical and surgical services rendered to Defendant's members and their dependents.

83. Through an established and ongoing course of dealing between the parties, an implied-in-fact contract arose from the parties' conduct and mutual assent, as demonstrated by:

- Plaintiff's provision of medical and surgical services to Defendant's members and their dependents with the reasonable expectation of payment;
- Plaintiff's submission of HCFAs and supporting documentation in accordance with Defendant's claims-processing requirements;

- Defendant's receipt, review and adjudication of those claims;
- Defendant's issuance of EOBs identifying allowed amounts and payment responsibility;
- Defendant's partial payment of certain of those claims, including the partial payments identified above; and
- Defendant's participation in the open negotiation and IDR processes concerning the amounts owed on those claims.

84. The parties' conduct manifested mutual assent that Plaintiff would render medical and surgical services to Defendant's members and that Defendant would process and remit payment for those services in accordance with its established payment practices and applicable law.

85. The consideration for the implied-in-fact contract consisted of Plaintiff's rendering of medical and surgical services that discharged Defendant's obligations to its members, in exchange for Defendant's undertaking to process and remit payment for those services.

86. Plaintiff fully performed its obligations under the implied-in-fact contract by rendering the services at issue and by submitting timely and complete claims and supporting documentation consistent with Defendant's requirements and industry standards.

87. Defendant breached the implied-in-fact contract by failing to honor the payment obligations arising from the parties' course of dealing, including by:

a. Failing to remit payment, or remitting only partial payment, for the services rendered;

b. Issuing payment determinations inconsistent with its own established payment practices;

c. Unreasonably delaying payment following receipt of complete claims and supporting documentation;

d. Failing to remit the balances established through the IDR process which balances are pled under this Count solely as evidence of the amounts due and not as an independent federal claim; and

e. Retaining the benefit of Plaintiff's performance without payment as contemplated by the parties' established course of conduct.

88. Defendant's breaches deprived Plaintiff of the benefit of the parties' implied agreement.

89. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including the unpaid amounts due, administrative and collection costs, and the loss of the time value of money.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**AS AND FOR A FIFTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT**

90. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

91. An actual and justiciable controversy exists between the parties regarding Defendant's obligation to reimburse Plaintiff for medical services rendered to its members and their dependents.

92. Plaintiff seeks a declaration that:

a. Defendant is obligated to pay for the medical services provided;

b. Defendant is obligated to reimburse Plaintiff in accordance with applicable law, governing agreements, and binding dispute resolution mechanisms, including those to which Defendant expressly assented through participation in the IDR process.

c. Defendant's failure to comply with such determinations is unlawful and improper; and

d. Plaintiff is entitled to payment in accordance with applicable law and governing agreements.

93. A declaratory judgment will resolve uncertainty and guide the parties' future conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**ACCOUNT STATED**

94. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

95. Plaintiff rendered medical services to Defendant's members and their dependents and submitted HCFAs to Defendant reflecting the amounts due.

96. Defendant received and retained those HCFAs.

97. Defendant failed to object to the HCFAs within a reasonable time and/or made partial payments acknowledging the validity of the charges, without disputing the underlying services.

98. Defendant's conduct constitutes an implied agreement as to the correctness of the amounts due.

99. An account stated exists for the outstanding balance.

100. Defendant has failed to pay the agreed-upon amount.

101. Plaintiff is entitled to recover the balance due.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**AS AND FOR A SEVENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT (Pled in the Alternative)**

102. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

103. Defendant received the benefits of the underlying medical services Plaintiff rendered to Defendant's members. These medical services were provided at Plaintiff's expense and under circumstances that would make it unjust for Defendant to retain the benefits without commensurate compensation.

104. Defendant had reasonable notice that Plaintiff expected payment for the benefits conferred as it received HCFAs from Plaintiff that set forth the amounts billed for the medical services Plaintiff rendered to Defendant's members. Defendant appreciates, realizes and knows that the benefits were conferred because it issued Explanations of Benefits ("EOB") and made

initial payments or denied payment. Thus, there was a direct connection between Plaintiff's impoverishment and Defendant's enrichment.

105. At all relevant times, Defendant refused to render appropriate payment to Plaintiff for the medical services rendered to its members covered under plans sponsored, funded, insured and/or administered by Defendant, contrary to the insurance provided by the respective plans to its members and dependents, and contrary to the common law, statutory and regulatory obligations of Defendant.

106. Defendant was paid premiums by its members for out-of-network and/or emergency services coverage and, pursuant to those premiums, Defendant was legally obligated to provide such coverage to plan members and their dependents.

107. To satisfy its coverage and legal obligations, Defendant required the services of Plaintiff to render medical services, including emergency and urgent medical care where applicable. Plaintiff did, in fact, render such medical services to Defendant's members and their dependents.

108. Defendant has, therefore, received and retained a benefit as a result of Plaintiff rendering medical services that remain grossly underpaid. Thus, Defendant has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when that money should have been paid in a timely and appropriate manner to Plaintiff. It is against equity and good conscience to deprive Plaintiff of the funds Defendant owes.

109. As a result of Defendant's unjust enrichment, Plaintiff has suffered damages.

110. The damages sought under this Count include the full reasonable value of Plaintiff's services, as reflected by Plaintiff's billed charges and other objective indicators of value, including the amounts awarded through the IDR process.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages in the amount of $61,384.14, representing the reasonable value of Plaintiff's services less all amounts previously remitted by Defendant;

b. Alternatively compensatory damages in an amount that is just and equitable;

c. Interest;

d. Costs of suit;

e. Attorneys' fees; and

f. Such other relief as the Court deems equitable and just.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**

**QUANTUM MERUIT (Pled in the Alternative)**

111. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

112. Plaintiff conferred a valuable benefit upon Defendant by providing good faith medical services to Defendant's members and their dependents at Plaintiff's expense, with the reasonable expectation of payment.

113. Defendant knowingly accepted and retained the benefit from the medical services Plaintiff rendered to its members and their dependents under the plans sponsored, funded, insured and/or administered by Defendant.

114. Defendant had a reasonable expectation that Plaintiff expected payment for the medical services provided to Defendant's members and their dependents as Defendant received HCFAs from Plaintiff that set forth the amounts billed for the medical services provided. Defendant appreciates, realizes and knows that Plaintiff expected payment for the medical services provided to its members and their dependents because it issued EOBs and made initial payments or denied payment.

115. At all relevant times, Defendant refused to render appropriate payment to Plaintiff for the medical services provided to its members and their dependents covered under plans sponsored, funded, insured and/or administered by Defendant, contrary to the insurance provided by the respective plans to its members and their dependents, and contrary to the common law, statutory and regulatory obligations of Defendant.

116. It is inequitable for Defendant to retain the benefit of Plaintiff's medical services without paying the reasonable value for Plaintiff's services.

117. Plaintiff is therefore entitled to recover under the doctrine of quantum meruit the fair and reasonable value of the medical services rendered by Plaintiff to Defendant's members and their dependents.

118. Plaintiff seeks recovery under this Count for the fair and reasonable value of its services, including its billed charges, as an alternative to its contractual claims.

119. As a result of Defendant's failure to pay the fair and reasonable value for the medical services Plaintiff rendered to Defendant's members and their dependents, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages in the amount of $61,384.14, representing the reasonable value of Plaintiff's services less all amounts previously remitted by Defendant;

b. Alternatively compensatory damages in an amount that is just and equitable;

c. Interest;

d. Costs of suit;

e. Attorney's fees; and

f. Such other relief as the Court deems equitable and just.

**<u>AS AND FOR AN NINTH CAUSE OF ACTION</u>**

**NY INSURANCE LAW § 3224-a**

120. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

121. Plaintiff avers this cause of action to the extent Defendant is an insurer subject to the requirements of the New York Insurance Law § 3224-a.

122. Plaintiff submitted clean claims to Defendant for medical services rendered to Defendant's insureds, including, but not limited to, the claims described herein.

123. In response to Plaintiff's claims, Defendant issued partial payment or denied payment as prescribed by the NSA.

124. Plaintiff then proceeded to dispute Defendant's partial payment via the NSA's IDR process, resulting in IDR determinations in Plaintiff's favor.

125. Under the NSA, CIDREs issued final and binding determinations establishing the proper reimbursement amount for the out-of-network claims described herein.

126. Defendant opted not to remit the IDR determination payments. Thus, Defendant utilized the NSA for purposes of calculating its initial payments only to "opt out" of the NSA following the IDR determinations.

127. By failing to comply with the IDR determinations, Defendant no longer has any justification for its initial ***partial*** payments.

128. Accordingly, claims herein were ultimately not processed within the timeframes required by law, including but not limited to thirty (30) days for electronically submitted claims and/or forty-five (45) days for paper claims.

129. Defendant further failed to timely provide proper notice of any alleged deficiencies in the submitted claims as required by statute.

130. Defendant instead issued partial payments and/or delayed payments without justification, in violation of its statutory obligations.

131. As a result, Defendant is liable for the unpaid amounts due, together with statutory interest and any additional relief permitted under the NYIL § 3224-a.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**CLAIM FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems just and equitable.

Dated: September 2, 2026
Fair Lawn, New Jersey

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*
By: */s/ John P. Stadler*
John P. Stadler, Esq.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 735-0845
jstadler@gottliebandgreenspan.com
**New York Office:**
99 Wall Street, Suite 1139
New York, NY 10005
(Please respond to our NJ office.)

INDEX NO.: _______________

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

MANHATTAN MEDICAL PRACTICE, PC,

PLAINTIFF,

-AGAINST-

BLUE CROSS BLUE SHIELD ASSOCIATION,

DEFENDANT.

**SUMMONS AND COMPLAINT**

**GOTTLIEB & GREENSPAN, LLC**

17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 735-0845
**New York Office:**
99 Wall Street, Suite 1139
New York, NY 10005

TO: Blue Cross Blue Shield Association
200 East Randolph Street
Chicago, IL 60601

Service of a copy of the within

Dated: September 2, 2026
Fair Lawn, New Jersey

Attorneys for Plaintiff, Manhattan Medical Practice, PC

Case 2:26-cv-06493 Document 1-1 Filed 10/08/26 Page 29 of 33 PageID #: 50

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
----------------------------------------X

Index No. 626067/2026

MANHATTAN MEDICAL PRACTICE, PC,

Plaintiff,

- against -

**NOTICE OF APPEARANCE**

BLUE CROSS BLUE SHIELD ASSOCIATION,

Defendant.
----------------------------------------X

**TO THE CLERK OF THE COURT:**

Kindly enter the appearance of Eric Schmidt, Esq., of counsel, with the law firm Gottlieb and Greenspan, LLC, as counsel for Plaintiff Manhattan Medical Practice, PC, in the above-captioned matter. I certify that I am admitted to practice in this Court.

Dated: September 18, 2026

GOTTLIEB AND GREENSPAN, LLC
*Attorneys for Plaintiffs Manhattan Medical Practice, PC*

By: /s/ Eric Schmidt
Eric Schmidt, Esq.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
201-377-0937
eschmidt@gottliebandgreenspan.com
**New York Office:**
99 Wall Street, Suite 1139
New York, NY 10005
(Please respond to our NJ office.)

Attorney:
JOHN P. STADLER, ESQ.
GOTTLIEB & GREENSPAN
17-17 ROUTE 208 SUITE 250
FAIR LAWN NJ 07410

8 6 5 6 3 6

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF SUFFOLK

MANHATTAN MEDICAL PRACTICE, PC
Plaintiff

BLUE CROSS BLUE SHIELD ASSOCIATION
Defendant

Index / case #: 626067/2026

# AFFIDAVIT OF SERVICE

Kane County, State of: Illinois Steven A. Stosur being sworn, says: Deponent is not a party herein, is over the age of 18 years and resides in the State of: Illinois

On 9/10/2026 at 2:01 am/pm at: 200 EAST RANDOLPH STREET CHICAGO IL 60601

Deponent served the within: NOTICE OF ELECTRONIC FILING; SUMMONS & COMPLAINT

On which were set forth the Index No., herein, and date of filing

On: BLUE CROSS BLUE SHIELD ASSOCIATION
(herein after called the recipient) therein named.

[ ] **Individual** — By delivering a true copy of each to said recipient personally; Deponent knew the person so served to be the person described in as said recipient therein

[ ] **Suitable Age person** — By delivering thereat a true copy of each to; ______ a person of suitable age and discretion.Said premises is recipients [ ] Actual Place of Residence [ ] Actual Place of Business within the State.

[ ] **Affixing to Door** — By affixing a true copy of each to the door of said premises which is recipients [ ] Actual Place of Residence [ ] Actual Place of Business, within the State
Deponent was unable with due diligence to find recipient or person of suitable age and discretion thereat having called there ______

[X] **Corporation or Partnership** — By delivering thereat a true copy of each to: Michelle Johnson personally. Deponent knew said corporation / partnership so served to be the corporation / partnership described in said aforementioned document as said recipient and knew said individual to be Administrative Assistant thereof.

[ ] **Mailing** — Within 20 days of such delivery, or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to recipient at recipients last known [ ] Actual Place of Residence [ ] Actual Place of Business at ______ and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "personal and confidential" and did not indicateon the outside, thereof by return address or otherwise that the communication was from an attorney or concerned an action against the defendant.

[X] **Description**

| | | | | | |
|---|---|---|---|---|---|
| [ ] Male | [ ] White skin | [X] Black hair | [ ] 14-20 Yrs | [ ] Under 5' | [ ] Under 100 Lbs |
| [X] Female | [X] Black skin | [ ] Brown hair | [ ] 21-35 Yrs | [ ] 5'0"-5'3" | [ ] 100-130 Lbs |
| | [ ] Yellow skin | [ ] Gray hair | [X] 36-50 Yrs | [X] 5'4"-5'8" | [X] 131-160 Lbs |
| | [ ] Brown skin | [ ] Blonde hair | [ ] 51-65 Yrs | [ ] 5'9"-6'0" | [ ] 161-200 Lbs |
| | [ ] Red skin | [ ] Red hair | [ ] Over 65 Yrs | [ ] Over 6' | [ ] Over 200 Lbs |

Other Identifying Features ______

[ ] **Military Service** — I asked the person spoken to whether recipient was in active military service of the United States or the State of New York in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

[ ] Subpoena Fee Tendered in the amount of ______

[ ] ______

Sworn to before me on 9/11/2026

Joan C Harenberg

OFFICIAL SEAL
JOAN C HARENBERG
Notary Public, State of Illinois
Commission No. 715300
My Commission Expires April 28, 2029

(Print name below signature)

Steven A. Stosur

File No. 626067/2026

Work Order No. 865636

**THE SUPREME COURT OF THE STATE OF NEW YORK**
**OF SUFFOLK COUNTY**

| | |
|---|---|
| MANHATTAN MEDICAL PRACTICE, PC,<br>Plaintiff,<br>-against-<br>BLUE CROSS BLUE SHIELD ASSOCIATION,<br>Defendant. | Index No.: 626067/2026 |

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

You have received this Notice because:

1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-Filing system ("NYSCEF") and,

2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  **Give this Notice to your attorney. (Attorneys: see "Information for Attorneys" pg.2).**

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service documents.**

  The **benefits of participating in e-filing** include:

  - Serving and filing your documents electronically
  - Free access to view and print your e-filed documents
  - Limiting your number of trips to the courthouse
  - Paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works;**

- Visit: www.nycourts.gov/efile-unrepresented or
- Contact the Clerk's Office or Help Center at the court where the case was filed. Court Contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit: www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An Attorney representing a party who is served with this notice must either:

1) Immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile; or

2) File the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; email: nyscef@nycourts.gov).

Dated: September 03, 2026

Name: Anna Picinic, on behalf of John P. Stadler, Esq.

Firm Name: Gottlieb & Greenspan, LLC

Address: 17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
Phone: 201-839-2621
Email: jstadler@gottliebandgreenspan.com

To: Blue Cross Blue Shield Association
200 East Randolph Street
Chicago, IL 60601

FILED: SUFFOLK COUNTY CLERK 09/02/2026 04:17 PM INDEX NO. 626067/2026
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 09/02/2026

**THE SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

MANHATTAN MEDICAL PRACTICE, PC,

Plaintiff,

-against-

BLUE CROSS BLUE SHIELD ASSOCIATION,

Defendant.

Index No.: ______________

**SUMMONS**

Plaintiff Designates **Suffolk** as the Place of Trial

The Basis of Venue is Place of Occurrence
989 W Jericho Tpke
Smithtown, NY 11787

Plaintiff's Place of Business:
565 Plandome Road
Manhasset, NY 11030

**TO THE ABOVE-NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within twenty(20) days of the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: September 2, 2026
Fair Lawn, New Jersey

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*
By: /s/ John P. Stadler
John P. Stadler, Esq.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 735-0845
jstadler@gottliebandgreenspan.com
**New York Office:**
99 Wall Street, Suite 1139
New York, NY 10005
(Please respond to our NJ office.)

**DEFENDANT'S ADDRESS:**
Blue Cross Blue Shield Association
200 East Randolph Street
Chicago, IL 60601